FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 APR 12 PM 1:27

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 04-17 |
| JOHN JOHNSON, et al. | SECTION "C" |

### ORDER AND REASONS

Before the Court is a motion *in limine* to exclude statements appearing on an audio tape containing communications between potential witnesses and various emergency personnel ("911 tape" or "tape"). The defense contends each of the statements is inadmissible on grounds that the statements are irrelevant, unduly prejudicial or impermissible hearsay. Oral argument was conducted on March 29, 2006. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

The government seeks to introduce the following five portions of the 911 tape:

1.) The statements of the teller identified as J.O.;
2.) The statements of Yvette LeMarre;
3.) The statements of Gary LNU;[1]
4.) The statements of Captain Jenkins; and
5.) The police traffic surrounding the immediate apprehension of the two defendants.[2]

---

[1] In his statement to the police operator, Gary LNU states, in reference to the Iberia Bank allegedly robbed in this case, "They've been hit a couple of times since [my daughter's] been working there." The defense objected specifically to this particular comment at oral argument and the government agreed not to offer it into evidence.

[2] The tape also contains conversations with alarm and security companies as well as radio traffic subsequent to the capture of the two suspects. The government does not intend to offer those portions of the tape and they are thus not at issue in this motion.

___ Fee_____
___ Process____
_X_ Dktd_____
___ CtRmDep___
___ Doc. No___

1

Each portion of the tape is considered separately. The Court will analyze the relevance/prejudice arguments first with regard to each of the statements before turning to the hearsay objections.

Relevance/Unfair Prejudice:

1.) The statements of the teller identified as J.O.

J.O. is a teller at the Iberia Bank who was an eyewitness to the events that took place on January 8, 2004. Her statements on the 911 tape consist of two distinct conversations. The Court considers each of her two statements separately.

a. J.O.'s First Statement

J.O.'s first statement is a conversation between J.O. and police operator #186. The conversation begins with J.O. stating, "We're being robbed, we're being robbed." She then gives the address of the bank and describes the events as they are transpiring in front of her as well as the appearance of the perpetrators. In addition to the descriptive aspects, this part of the conversation is heavily laden with emotion and fear from J.O. At one point she states, "Please don't hang up, please don't hang up, please ma'am, please don't hang up . . . they're gonna kill me, they're gonna kill me, please ma'am."

This is no question that this portion of the tape provides relevant evidence. According to the Federal Rules of Evidence, "Relevant evidence means evidence having

2

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (internal quotation omitted). In this part of the tape, J.O. is relaying her eyewitness account of the robbery including a description of the appearance and location of the robbers inside the bank. J.O. additionally notes the location of the bank, the presence of guns and the fact that the perpetrators are shooting. As the government correctly notes, the evidence J.O. provides "establishes the corpus of the various federal violations" (Rec. Doc. 363, p. 5) and, as such, is undoubtedly relevant to the government's case.

The only real question with regard to this portion of the tape is whether its probative value is "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. As described by the Supreme Court, "The term 'unfair prejudice' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1996). In balancing the prejudicial nature of a particular piece of evidence against its probative value, the judge must appreciate "the offering party's need for evidentiary richness and narrative integrity in presenting a case." Id. at 183. Moreover, the Supreme Court noted that the Government generally has a right to present evidence of a fact that a defendant would prefer to admit, so as to establish the "human significance" of the fact and "to implicate the law's moral underpinnings." Id. at 187-88. Relevant evidence offered by the government in criminal trials is usually prejudicial to the defendant. Accordingly, under

3

Rule 403, "evidence . . . should be excluded sparingly." United States v. Powers, 168 F.3d 741 (5th Cir. 1999).

In this case, the emotional aspect of the first part of J.O's conversation does not create a danger of unfair prejudice that substantially outweighs its considerable probative value. To the contrary, J.O.'s tone and language establish the "human significance" of the crime being committed. Old Chief, 519 U.S. at 187-88. As the Second Circuit noted when upholding the admission of gruesome photographs of the victims of the World Trade Center bombing, "Probative evidence is not inadmissible solely because it has a tendency to upset or disturb the trier of fact." United States v. Salameh, 152 F.3d 88, 123 (2d Cir. 1998). The defense argues that it does not dispute the fact that a bank robbery was committed which detracts from the probative value of the evidence in relation to its prejudicial nature. However, the defense has never formally conceded any elements of the offense; the government will still need to prove those elements beyond a reasonable doubt at trial. Moreover, even if the defense were to make certain factual stipulations, it is well-settled that "A party is not required to accept a judicial admission of his adversary, but may insist on proving the fact." Parr v. United States, 255 F.2d 86 (5th Cir. 1958). The Court finds the first part of J.O.'s statements is not unduly prejudicial.

b. J.O.'s Second Statement

The second portion of J.O.'s statement begins when she is connected to the emergency medical personnel. In contrast to the first part of her statement, this particular conversation lacks any intelligible descriptive elements. Rather, the entirety of this

4

portion of J.O.'s statement consists of the medical personnel trying to calm J.O., who is crying and hyperventilating.

The balancing required under Rule 403 is different here from the previous analysis. There is no probative value in this portion of the tape that is not already covered by the initial part of her conversation, including J.O's obvious distress. J.O. continues to be audibly terrified but says nothing that adds support to any element of the government's case. On the other side of the equation, this part of the tape is prejudicial. J.O. is expressing raw emotion that has an undeniable emotional impact. Its only potential influence on the jury is in an emotional capacity. The danger of unfair prejudice of this portion of the tape substantially outweighs its negligible probative value and it is therefore excluded.

2.) The statements of Yvette LeMarre

Yvette LeMarre is an eyewitness who was outside of the bank when she claims to have heard gunfire and have seen a man running away in a mask. Her conversation with the police operator consists of her description of what she saw and heard in response to questioning from the police operator. Like the first part of J.O.'s statement, it is highly relevant. Further, there is little in this portion of the tape that can be characterized as unfairly prejudicial. Unlike J.O., LeMarre is relatively composed while speaking to the police operator. On two occasions, she states, "Oh my god, I'm shaking," but her tone is calm and the comments occur in the midst of highly probative conversation. This portion of the tape is admissible in its entirety under Rule 403.

3.) The statements of Gary LNU

Gary LNU is the father of an Iberia Bank employee. In his statement to the police operator, Gary states that he was on the phone with his daughter who was working at the bank when he heard "a big bang" and the phone was disconnected. Regarding the probative value of Gary's conversation, in addition to statements about the gunshots he heard, his concern for his daughter is relevant to establishing the "human significance" of the crime. Old Chief, 519 U.S. at 187-88. The defense has not articulated any reason why this part of the tape raises any danger of unfair prejudice and no such reason is apparent to the Court. The statements of Gary LNU are admissible under Rule 403.[3]

4.) The statements of Captain Jenkins

Captain Jenkins is a police officer who was shot at the Iberia Bank during the alleged robbery. On the 911 tape, Officer Jenkins tells the police operator that there was a robbery at the Iberia Bank and that he and three or four others were shot. As the defense concedes, his statements are clearly relevant. There is nothing in Officer Jenkins's comments that create a danger of unfair prejudice that could substantially outweigh their probative value. These statements are admissible under Rule 403.

5.) The police traffic surrounding the immediate apprehension of the two defendants

---

[3] See supra note 1 for what the government agrees will be excised.

The police traffic leading up to the apprehension of the defendants is infused with probative evidence. The statements include physical descriptions and locations of the perpetrators of the offense just after it happened, discussion of various individuals who were shot during the robbery, as well as comments regarding the weapons allegedly used in the offense. The defense does not point to any specific reason as to why this part of the tape is unfairly prejudicial. It is therefore admissible under Rule 403.

Hearsay:

The defendants claim each of the statements on the tape constitutes inadmissible hearsay. The Court finds that each of the statements constitutes present sense impressions which are admissible under the hearsay exception outlined in Rule 803(1) of the Federal Rules of Evidence.[4]

Rule 803(1) provides that "(a) statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded by the rule against hearsay. The underlying theory of this exception "is that substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation." Advisory Committee Note to Rule 803(1).

Each of the various statements on the 911 tape was made while the declarant was perceiving the event or immediately thereafter. There was no time in any of the

---

[4] The first part of J.O.'s statement on the tape is also admissible as an excited utterance under Rule 803(2).

7

conversations on the 911 tape for the declarant to consciously manipulate the truth. Each therefore falls squarely within the scope of Rule 803(1) and are therefore admissible.[5]

Heightened Reliability:

The defendant argues that "the most serious problem with the use of the 911 recording . . . is that it would imperil Mr. Johnson's right to reliable capital sentencing as guaranteed by the Eighth Amendment." (Rec. Doc. 355, p. 5). Although the Court acknowledges the "heightened concern for fairness and accuracy" Ford v. Wainwright, 477 U.S. 399, 414 (1986) in capital cases, the Court does not find these tapes to be unfair or inaccurate.

Accordingly,

**IT IS ORDERED** that the Motion *in limine* is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the government provide the Court and opposing counsel within two weeks a redacted version of the 911 tape containing the portions of the tape that it intends to offer at trial consistent with this opinion and the government's concessions at oral argument.

New Orleans, Louisiana, this 12 day of April, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[5] The defense additionally raises a Sixth Amendment Confrontation Clause objection citing Crawford v. Washington, 541 U.S. 36 (2004). The government has thus far indicated an intention to call each of the witnesses that appear on the tape which eliminates any Confrontation Clause concerns at this time. See Crawford, 541 U.S. at 59 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").