UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 04-17 |
| JOHN JOHNSON | SECTION "C" |

ORDER AND REASONS

Defendant John Johnson ("Johnson") has filed a Motion for Order of Additional Discovery Concerning Race Based Decision Making. (Rec. Doc. 1436). Having considered the record, the memoranda of counsel and the law, the motion is DENIED for the following reasons.

The essence of the defense claim is that the U.S. Attorney's Office made a race based decision to prosecute this offense federally, in order to obtain a predominantly white jury venire drawn from all 13 parishes of the Eastern District of Louisiana. Had the charge been prosecuted in Orleans Parish Criminal District Court as a state offense, the venire would have been drawn only from Orleans Parish, a majority African-American community. The defense notes that the ultimate jury that sat on the defendant's case consisted of ten white jurors, two black jurors; two jurors from Orleans Parish and the remainder from the surrounding parishes.

The defense further contends that defendants who committed similar crimes as defendant Johnson, but in parishes other than Orleans, were not pursued federally. This "demographic circumstance," according to defendant Johnson, "introduced arbitrary factors into the federal death penalty scheme." (Rec. Doc. 1436, p. 2).

The defense seeks detailed information from the government, dating back to 1994, concerning potential federal prosecutions for murder and/or bank robbery outside of Orleans Parish, including identifying the race of the offender and the race of the victim; all communications between the federal government and the Orleans Parish District Attorney's

Office and any internal communications within the Department of Justice which reference race or jury venire make-up; and all documents dealing with the decision to prosecute defendant Johnson's case, or refrain from prosecuting federally cases arising outside Orleans Parish.

Legal Standards

Federal prosecutors have broad discretion in enforcing criminal laws and a presumption of regularity attaches to their decisions. *United States v. Armstrong*, 116 S.Ct. 1480, 1486 (1996). If a prosecutor has probable cause in believing an accused has committed a crime, "the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 1486, quoting *Borderkircher v. Hayes*, 98 S.Ct. 663, 668 (1978).

> Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." (citation omitted). It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function. "Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." (citation omitted).

*Id.*

Nonetheless, a prosecutor is prohibited under the principles of equal protection encompassed in the due process clause of the Fifth Amendment to base a prosecution upon race, religion or any other arbitrary factor. *Id.* In order for a defendant to succeed on such a claim, he must demonstrate that the prosecution had both a discriminatory effect and that it was motivated by a discriminatory purpose. *Id.* at 1487. With respect to the effect, in the usual case, the defendant must produce evidence that similarly situated defendants of other races could have been prosecuted, but were not. With respect to intent, the defendant must establish that his

2

prosecution was in bad faith, or invidious, in that it rested on improper considerations, such as race. *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1999). A discriminatory purpose "implies that the decisionmaker...selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." (citation omitted). *Id.* at 335.

The standard a defendant must meet in order to obtain discovery from the government on a claim of race based prosecution is similarly demanding.

> If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.

*Id*. at 1488.

To justify discovery from the government, the defendant must "show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 122 S.Ct. 862, 863 (2002). Again, with respect to effect, this means the defendant must "produce some evidence that similarly situated defendants...could have been prosecuted, but were not..." *United States v. Armstrong,* 116 S.Ct. at 1488.

"Similarly situated" means that an offender outside the protected class "committed roughly the same crime under roughly the same circumstances" but was not prosecuted. *United States v. Lewis,* 517 F.3d 20, 27 ( 1st Cir. 2008). The factors to be included should be those "that are at least arguably material to the decision as to whether or not to prosecute." *Id*. "(D)efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

Analysis

In this case, in order to show a discriminatory effect, defendant Johnson needs to produce "some evidence" that similarly situated African-American defendants outside of Orleans Parish, but within the Eastern District of Louisiana, could have been federally prosecuted but were not.

Defendant Johnson identifies the similarly situated comparison as African Americans who commit bank robberies and cause the death of another person. However, this is too broad a category and fails to take into consideration other legitimate prosecutorial factors that can distinguish one bank robbery killing from another. See *United States v. Lewis,* 517 F.3d 20, 26-28 (1st Cir. 2008); *United States v. Olvis*, 97 F.3d 739, 744-745 (4th Cir. 1996). As the government notes in its response, the victim in this case, Sidney Zaffuto, was an active duty law enforcement officer, killed while serving as a security guard for the Iberia Bank. (Rec. Doc. 1442, p. 10-11). As became abundantly clear during the trial, this factor was of great significance to the government. It was a major theme of the victim impact evidence presented and the major theme of the closing argument in the penalty phase.[1] It is also a legitimate non-race based factor to warrant differential treatment. As a law enforcement officer, Zaffuto had the unique responsibility of protecting the employees and customers of the bank, and served as the front line for their defense. Unlike customers or bank employees who could legitimately attempt to hide or flee, his obligation was to risk his own safety for theirs.

Furthermore, Johnson had a prior criminal history, as did his co-defendants. This is also a legitimate distinguishing feature. See *Belmontes v. Brown*, 414 F.3d 1094, 1128-1129 (9th Cir. 2005); *United States v. Smith*, 231 F.3d 800, 812 (11th Cir. 2000).

For these reasons, the bank robbery/murders cited by Johnson are not sufficiently similar to be considered. Two of the cases cited, *State v. Scott*, 921 So.2d 904 (La. 2006) and *State v.*

---

[1] The Court recognizes that the victim's status as a law enforcement officer is not a statutory aggravating factor under federal death penalty law, while it is under Louisiana law, which inures towards the state being the more appropriate prosecuting arm. Nevertheless, for purposes here of determining who are similarly situated defendants, this factor is a crucial distinction.

4

*Dunn*, 831 So.2d 862 (La. 2002), actually arose from the same underlying crime - a bank robbery in which two bank tellers (not law enforcement officers) were killed.[2] *State v. Vance*, 947 So. 2d 105 (La. App. 5th Cir. 2006) concerned a robbery and attempted murder in which no one was killed. The defendant shot at a non-law enforcement motorist who was pursuing him after the robbery. *State v. Falkins,* 880 So.2d 903 (La. App. 5th Cir. 2004) and *State v. Williams,* 889 So.2d 1135 (La. App. 5th Cir. 2004) were bank robberies in which no shots were apparently fired. Finally, in *United States v. Eric Matthews*, Cr. No. 98-93 "C" (E.D.La.), Matthews allegedly murdered his wife, one stepchild and abducted the other. No bank robbery was involved, nor any injury to any law enforcement officer.

In addition, defendant Johnson fails to indicate if any of the above defendants had criminal histories analogous to his.[3]

While the defense has failed to establish that similarly situated defendants have been treated differently, the defendant has contended that only African Americans have been prosecuted federally in this district for capital crimes. If true, and the Court assumes it is for purposes of this motion, that is indicative of a discriminatory effect.

Turning then to discriminatory purpose, the defense theory is based on speculation and some troublesome assumptions. Defendant Johnson argues that the government prosecuted this case federally to avoid a majority African-American jury venire. Implicit in the defense

---

[2]In his reply brief, defendant Johnson references for the first time another case, *State v. Kendall Breaux,* without a citation (Rec. Doc. 1454, p. 8). This appears to be in error, with the defense intending to cite *State v. Dunn*, as it had in its original brief. Kendall Breaux was a co-defendant of Dunn and pled guilty to two life sentences. *State v. Scott*, 921 So.2d at 912, FN 3.

[3]In his reply brief, defendant Johnson alleges that James Dunn had a prior conviction for killing a police officer. A prior conviction for an unrelated murder is a statutory aggravating circumstance under Louisiana law. La. Code of Crim. Proc. 905.4(3). However, at Dunn's trial this was not alleged as a statutory aggravating factor, nor is any reference made in the Louisiana Supreme Court opinion to any prior conviction for a murder, much less one involving a police officer. *State v. Dunn*, 831 So.2d 862 (La. 2002). The same is true of co-defendant Anthony Scott. *State v. Scott,* 921 So.2d 904 (La. 2006). The Court therefore disregards this contention as unfounded. Even if it were true, however, it does not make the analogy sufficiently similar to fulfill the *Armstrong* requirement.

5

argument is that an African-American jury is less likely to return a death verdict against an African-American defendant than a white jury. Indeed, Johnson specifically points out that during the eleven years between 1997 and 2009, no death verdict was returned in Criminal District Court and, in fact. if multiple homicides are omitted from the survey, no death verdict has been returned in that court in over twenty years. Rec. Doc. 1330, p. 8, 9-10.

What is disturbing about the defense argument is that it is akin to the pot calling the kettle black. Johnson accuses the government of racism in allegedly wanting to avoid a predominantly African-American jury and at the same time Johnson is making a similar race-based argument that he should be allowed to benefit from a predominantly African-American jury. The defense appears to implicitly argue that only an African-American dominated jury is capable of returning a race neutral verdict. However, an equally valid explanation for the scarcity of death sentences from Criminal District Court is race based jury nullification. African-American jurors, skeptical of the fairness of a white dominated criminal justice system, may be refusing to sentence black defendants to death, regardless of how otherwise compelling the evidence might be to justify capital punishment in the particular case. See, for example, Paul Butler, "Racially Based Jury Nullification: Black Power in the Criminal Justice System," 105 *Yale L. J.* 677 (1995). Sparing a black capital defendant from a death sentence he would otherwise in fact deserve, because of racial reasons unrelated to the merits of his particular case, is not a race neutral decision.[4]

Defendant Johnson also appears to assume that a white dominated jury will render a racially biased verdict against an African-American. In *United States v. Smith*, 231 F.3d at 813, the defendants likewise alleged that the decision to prosecute the case in federal court rather than state court was motivated by a wish to avoid an African-American jury. The Eleventh Circuit

---

[4]The Court recognizes that the government has an arguably higher duty to conduct itself professionally and not be influenced by improper considerations. See *Berger v. United States*, 295 U.S. 78, 88 (1935). At the same time a Court should not condone an action urged by the defense that is also influenced by similarly inappropriate considerations.

6

summarily rejected the claim, concluding it was based on the unjust assumption that the defendants would not get a fair trial in federal court.

This Court is certainly cognizant that racial prejudice exists. A main purpose of the extensive juror questionnaire and the individual voir dire was to allow each side to ferret out those jurors who appear to harbor any sort of bias, one way or the other, for any reason, and to seat a fair and impartial jury. Noteworthy, of course, is that two African-Americans did in fact serve on the jury and that the verdict of death was unanimous.

The Court also concludes that even if the government did in fact chose to prosecute this case federally, at least in part to avoid having the case heard in Criminal District Court, that decision is not improperly race based. Regardless of the reason for the dearth of capital sentencings in Criminal District Court, be it poorly prepared or presented cases by the Orleans Parish District Attorney's Office, race or class based jury nullification on the part of juries, or simply an unending stream of capital prosecutions that did not in fact warrant a death verdict, the ultimate result was the same - no death verdicts in over twenty years involving single victim homicides. That reality, regardless of its cause, is a factor the U.S. Attorney's Office could legitimately consider in deciding whether to prosecute the case themselves or defer to the Orleans Parish District Attorney's Office.[5] Enormous resources go into a capital prosecution, be it state or federal. The U.S. Attorney's Office, so long as it has jurisdiction and can properly prosecute a capital case federally under the law, is not obliged to defer to a venue historically hostile to rendering a death sentence.

The Court is aware of the disturbing statistics regarding the disproportionate number of minorities being prosecuted for capital offenses and sentenced to death, as pointed out by the Amicus Brief of the NAACP. The Court also does not doubt that conscious or, more insidiously,

---

[5]As the Court is denying the motion on the basis of the failure of the defense to establish the elements necessary for further discovery, the Court makes no finding with regard to the government claims that at least some of the material requested is protected by the deliberative process privilege.

7

unconscious racism can influence decisionmaking, from an initial arrest by police through a final decision by a jury. In that regard, the Court notes with dismay the dismissive attitude of the government with regard to this issue, referencing it as a claim that has "become perfunctory in modern capital cases." (Rec. Doc. 1443, p. 3). Nevertheless, the defense has failed in this case to meet the rigorous standards required to justify any further discovery on this issue.[6]

Accordingly,

IT IS ORDERED that the Motion for Order of Additional Discovery Concerning Race Based Decision Making filed by John Johnson is DENIED. (Rec. Doc. 1436).

New Orleans, Louisiana, this 10th day of March, 2010.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[6] The distinct Motion to Set Aside the Death Sentence Based Upon the Appearance of the Influence of Race and Other Arbitrary Factors filed by the defendant will be separately considered. (Rec. Doc. 1330).